IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>SITA LOTOFHEA LEUSOGI,<br><br>                    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S RENEWED MOTION TO DISMISS INDICTMENT<br><br>Case No. 2:21-CR-32-TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Renewed Motion to Dismiss Indictment. For the reasons discussed below, the Court will grant the Motion and dismiss the Indictment against Defendant without prejudice.

I.  BACKGROUND

Defendant was charged with possession of methamphetamine with intent to distribute, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm with an obliterated serial number. In July 2021, Defendant pleaded guilty to possession of methamphetamine with intent to distribute. However, prior to sentencing, it was determined that Defendant was not competent when he entered his guilty plea. As a result, on June 1, 2022, the Court granted  Defendant's stipulated motion to withdraw his guilty plea on the grounds that Defendant was "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he [was] unable to understand the nature and consequences of the

proceedings against him and to assist properly in his defense."[1] Further, consistent with the requirements of the Insanity Defense Reform Act ("IDRA"), the Court ordered "the defendant be committed to the custody of the U.S. Attorney General to hospitalize the defendant for treatment in a suitable facility for such a reasonable period of time, not to exceed four (4) months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed."[2] Specifically, the IDRA requires commitment of an incompetent defendant to the Attorney General[3] and further requires the commitment be for "a reasonable period of time, not to exceed four months."[4]

On September 29, 2022, Defendant filed his first motion to dismiss on the basis that, despite the Court's June 1, 2022 Order, Defendant remained in county jail with no indication of when he would be taken into custody by the Attorney General and transferred to suitable facility, as ordered by the Court and required by the IDRA.[5] Defendant argued that holding him beyond the 4-month limitation violated the IDRA and his Due Process rights.

On October 19, 2022, the Court denied Defendant's September 29, 2022 motion to dismiss.[6] In so doing, the Court noted that there is not a consensus among the courts that have

---

[1] Docket No. 87 at 1.

[2] *Id.*

[3] *United States v. Anderson*, 679 F. App'x 711, 712–13 (10th Cir. 2017) ("The language in § 4241(d) is unambiguous and mandatory—after finding that [a defendant] was mentally incompetent to stand trial, the district court was required to commit [that defendant] to the Attorney General's custody.").

[4] 18 U.S.C. § 4241(d)(1).

[5] Docket No. 89.

[6] Docket No. 93.

considered whether the IDRA's four-month statutory cap encompasses the time a defendant awaits suitable placement. However, the Court referenced a recently published case by the Ninth Circuit (the only circuit court to have addressed the issue directly), wherein the court determined that, regardless of whether "the statute allows some amount of pre-hospitalization confinement," a delay in placement of eight months falls "outside any constitutional reading of the statute."[7] While the Ninth Circuit concluded that the statute had been violated, it found that "the more appropriate remedy to dismissal" was an order instructing "the Attorney General to hospitalize [the defendant] within seven days."[8] This Court agreed with that analysis and held that "[l]ike the Ninth Circuit, the Court need not determine the precise scope of the IDRA because dismissal is not appropriate at this time."[9] Instead, the Court ordered "the Attorney General to place Defendant in a suitable facility within seven days of this Order."[10] The Court warned, "[i]f the Attorney General fails to comply with that Order, 'dismissal may become appropriate.'"[11]

The Attorney General has again failed to comply with the Court's Order. On October 27, 2022, the Court directed the parties to submit briefs on whether dismissal of the matter is now appropriate. In response, Defendant renewed his Motion to Dismiss, again arguing that continued incarceration violates the IDRA and his Due Process rights. The government also responded to the Court's directive, arguing that dismissal is not appropriate, but if the Court was inclined to dismiss, that Court should initiate proceedings under 18 U.S.C. § 4246 to evaluate whether

---

[7] *United States v. Donnelly*, 41 F.4th 1102, 1105 (9th Cir. 2022).

[8] *Id.* at 1108.

[9] Docket No. 93, at 5.

[10] *Id.* at 5–6.

[11] *Id.* at 6 (quoting *Donnelly*, 41 F.4th at 1107).

Defendant would pose a danger to himself or others if released. The government further provided an explanation for the Attorney General's failure to comply with the Court order, including a declaration from Dr. Dia Boutwell, the Chief of Psychological Evaluations for the Bureau of Prisons.

According to Dr. Boutwell's declaration,[12] there are only three "suitable facilities" to which Defendant could be transferred for purposes of competency restoration. There are significant wait times for beds in each of these facilities due to a shortage of resources. The beds are assigned based on the date of the original court order, for purposes of fairness and equity, and the only way a person would be moved up the line is if they are suffering "severe medical or psychological decompensation."[13] The current wait time for the facility to which Defendant has been assigned is 7-8 months. "The likely time frame for admission of [Defendant] into [the designated facility] is approximately February 2023."[14]

## II.  DISCUSSION

The Court must now determine if the failure of the Attorney General to comply with two orders to transport Defendant "amounts to the kind of flagrant misconduct warranting dismissal."[15] The Court notes that dismissal of an indictment is an extraordinary remedy.[16] While generally applied in the context of civil matters, the Court finds that the factors enumerated by

---

[12] Docket No. 96-1.

[13] *Id.* at 5–6.

[14] *Id.* at 6.

[15] *Donnelly*, 41 F.4th at 1107.

[16] *United States v. Morrison*, 449 U.S. 361, 367 (1981); *United States v. Gonzalez*, 248 F.3d 1201, 1205 (10th Cir. 2001).

the Tenth Circuit in *Ehrenhaus v. Reynolds*,[17] are helpful in guiding the Court in its consideration of dismissal. *Ehrenhaus* directs that, "[b]efore choosing dismissal as a just sanction," a court should consider the following factors:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[18]

First, the degree of actual prejudice to the Defendant is significant.[19] Actual prejudice occurs when "the error of which [the defendant] complains is an 'error of constitutional dimensions' that 'worked to [the defendant's] actual and substantial disadvantage.'"[20] An unreasonable or unjustified period of detention implicates the Defendant's due process rights and is therefore of constitutional dimensions.[21]

---

[17] 965 F.2d 916 (10th Cir. 1992).

[18] *Id.* at 921 (citations omitted).

[19] *See United States v. Orozco*, 916 F.3d 919, 925 (10th Cir. 2019) (finding, in the context of a sixth amendment violation, that "[b]ecause it is an extraordinary remedy, a district court may only dismiss an indictment when the defendant has been prejudiced") (citation omitted).

[20] *United States v. Snyder*, 871 F.3d 1122, 1128 (10th Cir. 2017) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Morrison*, 449 U.S. at 365 ("[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.").

[21] *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."); *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986) (stating that "valid pretrial detention assumes a punitive character" and therefore "may violate due process" "when it is prolonged significantly") (citations omitted); *see also Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("[A] person charged . . . with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future.").

Since the June 1, 2022 Order, Defendant has been incarcerated at a county jail while progress toward resolution of the charges against him has been halted. Assuming that Defendant is transferred to a suitable facility in February 2023, Defendant will have been incarcerated for 8 months just awaiting transfer—a time period the Ninth Circuit has deemed to violate a defendant's statutory rights under the IDRA.[22] Restoration proceedings would then last at least another four months, if not longer.[23] Notably Dr. Holmberg, one of the physicians to evaluate Defendant's competency, opined "that the Defendant is . . . unlikely to gain the ability to assist properly in his defense, even with appropriate and aggressive treatment, as many of his difficulties in this area are referable to his intellectual disability."[24] Continuing to incarcerate the Defendant for an indeterminate period, during which he is not receiving restorative treatment is contrary to this Court's orders and the requirements of the IDRA. Since Defendant has been deemed incompetent, by definition he is unable to assist in his defense,[25] rendering him unable to move his case forward. This substantial delay results in actual prejudice to Defendant's statutory and constitutional rights, which works a substantive disadvantage to the Defendant. This is particularly true where, as here, there is no indication that restoration proceedings are likely to result in restored competency for the Defendant.

---

[22] *Donnelly*, 41 F.4th at 1106.

[23] 18 U.S.C. § 4241(d) (providing for an initial four-month period and the possibility of an additional period "if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward").

[24] Docket No. 76, Exhibit B, at 15.

[25] *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

Second, the amount of interference with the judicial process is significant. As described above and in the Court's October 19, 2022 Order, the Court is required by the IDRA to commit an incompetent defendant to the custody of the Attorney General. The proceedings may not move forward until restoration efforts are completed. The interference is, therefore, causing the matter to remain stagnant while Defendant remains in custody for a period of months in violation of statute and contrary to judicial efficiency.

Third, the culpability of the government weighs in favor of dismissal. The Court has ordered the Defendant transferred to a suitable facility twice now, both of which have been ignored by the Attorney General. While Dr. Boutwell asserts that the delay in transportation is the result of limited resources, her declaration identifies bureaucratic obstacles that also play a role. Further, the BOP has chosen to designate a small number of facilities as "suitable facilities" and has failed to outfit them with the requisite staff, resources, and beds to handle the needs of those defendants requiring competency restoration. This has resulted in significant wait times just to enter the facility; times that are longer than the four months set out in the IDRA.

The fourth factor also weighs in favor of dismissal because the Court warned the parties in the Court's October 19, 2022 Order that "dismissal may become appropriate" if the Attorney General failed to transfer the Defendant as directed. Not only did the Attorney General fail to transfer the defendant, there is no intention to do so until at least February 2023.

Fifth, a lesser sanction will not adequately address the wrongs caused by the continued delay, nor will it spur compliance with the Court's orders. As noted, the Court was obligated by the IDRA to commit Defendant to the custody of the Attorney General for restoration proceedings. Despite two orders, the Attorney General has failed to hospitalize Defendant in a

suitable facility. The only alternative the Court sees available to address the identified wrongs is to issue yet another order directing the Attorney General to transfer the Defendant to a suitable facility. However, Dr. Boutwell's declaration makes clear that the Attorney General has no ability or intention of complying with this Court's orders or the requirements of the IDRA. Therefore, a lesser sanction will be wholly unfruitful and the Court finds that it has no less severe options by which to address the wrongs in this matter. Based on the above analysis, the Court concludes that in this rare instance, the drastic remedy of dismissal of the Indictment is warranted and appropriate.

Finally, the Court declines to Order proceedings under 18 U.S.C. § 4246 to evaluate Defendant for dangerousness, as requested by the government. Such proceedings do not appear procedurally proper at the current stage. Section 4241(d) provides "[i]f, at the end of the [four-month hospitalization in a suitable facility], it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of section[] 4246." Section 4246 states, in relevant part, "[i]f the director of a facility in which a person is hospitalized certifies that a person . . . who has been committed to the custody of the Attorney General pursuant to section 4241(d) . . . is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another" certain procedures shall be initiated. The plain language of these statutes dictates that proceedings under Section 4246 are not authorized by statute until after the Defendant has completed his time at the suitable facility, as described in Section 4241(d). As set forth above,

the Attorney General has failed to transport Defendant to a suitable facility under § 4241(d) and the government has failed to demonstrate that further delay will be beneficial.

### III.  CONCLUSION

It is therefore ORDERED that Defendant's Renewed Motion to Dismiss (Docket No. 97) is GRANTED.

It is further ORDERED that the Indictment (Docket No. 1) is DISMISSED WITHOUT PREJUDICE.

It is, therefore, further ORDERED that Defendant be released from the custody of the U.S. Marshal.

DATED this 10th day of November, 2022.

BY THE COURT:

_____
Ted Stewart
United States District Judge